THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS FLOWERS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No. 09 cv 1313 |
| | ) | Judge Feinerman |
| CITY OF CHICAGO, Chicago Police | ) | Magistrate Judge Nolan |
| Officers JASON JOHNSON, Star 3236, and | ) | |
| MARCHAND WRIGHT, Star 3164, | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' MOTIONS *IN LIMINE*

Defendants, City of Chicago, Officer Jason Johnson and Officer Marchand Wright, by and through their attorneys, Johnson & Bell, Ltd., respectfully move this Court, *in limine*, as follows:

**1. Motion to Bar evidence, testimony, or argument of prior complaints or allegations of misconduct, other prior or current lawsuits for alleged police misconduct, the underlying CR # in this matter, and to bar the testimony of Robert Giglio.**

Plaintiff intends to introduce testimony and evidence relating to prior instances of alleged misconduct by the Defendant Officers. Specifically, Plaintiff intends to call Chicago Police Sergeant Robert Giglio to testify about a completely unrelated CR# filed against Defendant Johnson after a prisoner escaped from the 7th District lockup while Defendant Johnson was working in the lockup. Defendants move to bar this witness, along with all general evidence of unrelated complaints of misconduct and lawsuits, because both constitute improper character evidence, or propensity evidence, under Fed.R.Evid. 404. Moreover, the evidence has no probative value to the issues on trial, and the danger of unfair prejudice to the defendants is certain. Introduction of the

evidence will also lead confusion of the issues and confusion of the jury in this case. Fed.R.Evid. 401, 402, 403 and 404.

Any information, allegation, or testimony that Defendant Johnson may have acted wrongfully in the past is nothing more than so-called "bad acts" evidence or "propensity evidence." Propensity evidence is inadmissible under Fed.R.Evid. 404(b) to prove that a party acted on the occasion in question consistent with his alleged bad character. *See Huddleston v. U.S.,* 485 U.S. 681, 685 (1988); *U.S. v. Shriver,* 842 F.2d 968, 974 (7th Cir. 1988). In this case, Plaintiff's only purpose for introducing or suggesting such evidence would be to attempt to fool the jury into believing that accusations of alleged misconduct had been brought against the defendant in the past, and therefore it is likely that the officer acted in a similar manner under the circumstances presented here.

Although Rule 404(b) permits the admission of evidence of other acts, if such evidence is directed toward establishing a matter at issue other than a defendant's propensity to commit the act charged, the plaintiff will not be able to satisfy his burden under Rule 404(b) of explicitly articulating which exception to the general rule applies. *U.S. v. Zapata,* 871 F.2d 616, 620-21 (7th Cir. 1989). To introduce such evidence, a party must show that (1) the evidence establishes a matter other than propensity, (2) the other act is "similar enough and close enough in time be relevant to the matter in issue," (3) evidence of the other act is sufficient to permit a jury to find that the act occurred, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Treece v. Hochstetler,* 213 F.3d 360, 363-64 (7th Cir. 2000); *Zapata*, 871 F.2d at 620. The proffered testimony of Giglio does not satisfy any of these standards.

2

Specifically regarding the substance of Giglio's anticipated testimony, it is certain that the plaintiff will ask about an incident during which an arrestee, who was being processed in the 7th District lockup, broke a lockup window and crawled outside, making good on his escape. Defendant Johnson, who was working with other officers not involved in this action in the lockup at the time, participated in the processing of the escaped prisoner. An investigation was conducted by the Chicago Police Department following the escape, and Defendant Johnson, along with other officers, was suspended for one day for inattention to duty. Unlike the case at bar, the CR# did not involve allegations of excessive force, willful and wanton conduct, nor intentional infliction of emotional distress.

In the present case, the plaintiff, Curtis Flowers, admits that he was fleeing from Defendant Johnson on a bicycle while Johnson was in the process of investigating a shooting that had just occurred. Plaintiff admits that Johnson and his partner repeatedly told him to stop, but he refused to do so. Following a chase, the plaintiff claims that he was struck by the police car that Johnson was driving, and sustained injuries as a result. Plaintiff admits that he was in possession of cannabis, and this is why he did not stop when ordered to do so by the officers. Plaintiff then claims that, while in custody at the police station, he was beaten by Johnson and another defendant because he admittedly was in possession of additional amounts of cannabis.

The allegations against Johnson by the plaintiff in the present case are obviously completely different from the allegations against Johnson in the subject CR#. Flowers alleges excessive force, willful and wanton conduct, and intentional infliction of emotional distress, while the CR# alleged inattention to duty. Flowers was outside, not in custody, when he rode away from the police on his bicycle, while the offender in the CR# had already been arrested and was in custody when he broke a window to escape the lockup. Flowers alleges he was hit by a car and beaten, while the offender

in the CR# made no allegations of excessive force. Flowers initiated his lawsuit personally, while the CR # was not initiated by a citizen, but by the police department. The differences are tremendous and irreconcilable.

Finally, and most importantly, because there is not even a tenuous relationship between the allegations made in the CR # and the facts of the present case, the introduction of testimony by Giglio would result in unfair prejudice that would significantly outweigh the value of the contemplated evidence. FRE 403. Plaintiff attempts to use this case for one reason only, to impugn the character of Defendant Johnson in the eyes of the jury. There is simply no other legitimate reason to use evidence that is so vastly different from the allegations in the case at bar. There is no probative value to the proffered testimony of Giglio, but even if there were, it would be hugely outweighed by the prejudice that would result from the admission of his testimony. *See also, Shaffer v. Brinegar,* 23 Fed.Appx.580, 584 (7th Cir. 1989), *citing Thompson v. Boggs,* 33 F.3d 847 (7th Cir. 1994); *Berkovich v. Hicks,* 922 F.2d 1018, 1022 (2nd Cir. 1991) (holding that the admission of evidence of other complaints against officers was irrelevant and overwhelmingly prejudicial to the defendant); *Lataille v. Ponte,* 754 F.2d 33, 34 (1st Cir. 1985) (prejudicial error to admit past disciplinary record). Once the plaintiff is allowed to brand Johnson as a slacker or sub-standard police officer by introducing completely irrelevant evidence, the jury will likely believe that this is true, and no denial from Johnson and no instruction from the court can cure the prejudice that will result.

The plaintiff cannot establish that the testimony of Giglio is anything more than propensity evidence. Nor can the plaintiff establish that this testimony is even slightly probative in the present case. This failure should lead the Court to bar Giglio as a witness under FRE 401, 402, and 404.

Likewise, Plaintiff should be barred from presenting evidence relating to other complaints against Defendant Johnson, Defendant Wright, or any of the other officers involved in the case, and he should be barred from presenting evidence relating to the underlying CR in the present case.

Whether or not the Independent Police Review Authority (IPRA) conducted internal investigations into past complaints against the officers is irrelevant to the issues of whether or not the officers engaged in the misconduct alleged in the plaintiff's complaint. Any evidence or suggestion that any investigation was conducted by IPRA into past acts of the officers would create a presumption in the minds of the jury that the Chicago Police Department believed that the officers, at some point, engaged in alleged wrongdoing, thereby creating unfair prejudice that greatly outweighs the minimal probative value of the evidence. FRE 403. Evidence pertaining to other CR investigations would confuse jury members over the issues to be decided at the trial of this matter, as they may feel the need to judge the character of the officers based on all of the complaints, instead of on the facts of this case. Furthermore, evidence pertaining to any CR investigation would confuse jury members over the issues to be decided at the trial of this matter, as they may feel the need to determine whether IPRA's investigations were conducted properly. The admission of this type of evidence will also lead to multiple "mini trials" in which the defendants will be forced to disprove the unrelated allegations of misconduct in an attempt to cure the extreme prejudice that will result from the introduction of this evidence. On top of all of that, evidence of other complaints or CRs would necessitate the introduction of inadmissible hearsay, is irrelevant, and would result in unfair prejudice, and should therefore be barred.

Regarding the CR# in the underlying case, which is listed as an exhibit by the Plaintiff in the proposed pre-trial order, the same reasons listed above apply. It should also be noted that the plaintiff himself did not file this complaint, but it was automatically generated when the lawsuit in

5

Case: 1:09-cv-01313 Document #: 48 Filed: 02/28/11 Page 6 of 13 PageID #:128

this case was filed. Additionally, no actual investigation of the underlying CR# was conducted because plaintiff's counsel refused to allow the plaintiff to participate in the investigation, and there is therefore nothing of substance in the underlying CR file.

For all of the reasons set forth above, the defendants respectfully request that Chicago Police Sergeant Robert Giglio be barred as a witness, and any evidence of prior police misconduct, including CR numbers and lawsuits against the defendant officers and the underlying CR file in the present matter, be excluded.

**2. Motion to Exclude all non-part witnesses from the courtroom during trial testimony.**

Defendants move this Court to exclude all witnesses (other than the parties) from the courtroom during the opening statements and testimony of any and all other witnesses. Such an order is proper because it prevents the contamination of the testimony of potential witnesses. Fed.R.Evid. 615.

**3. Motion to Bar any testimony, evidence, argument, or comments regarding other events or allegations of police misconduct in the media or any other forum.**

In recent months and years, allegations of misconduct by members of the Chicago Police Department have received media coverage in the city's major newspapers, local news broadcasts, and on the internet. Certain allegations have even received nation-wide coverage.

The Defendant Officers in this case have absolutely nothing to do with any of these publicized incidents. Moreover, if Plaintiff is allowed to introduce such evidence, Defendants would have no choice but to refute it. This would create a trial within a trial. The resulting impact on judicial economy, and the effect of forcing the jury to listen to, but not resolve, these allegations would prejudice the Defendant Officers in a manner that no defense or instruction could cure. As such, any testimony, evidence, argument or comments regarding these publicized events should be

6

barred, pursuant to FRE 401, 402, and 403. References to other allegations of police misconduct during this trial can only serve to inflame the Jury against the police in general, and against Defendants in this particular case. Comments and implied references to this affect have no probative value, are irrelevant to the issues presented and are highly prejudicial. *See, Saunders v. City of Chicago,* 320 F.Supp.2d 735, 740 (N.D.Ill.2004)(granting identical motion); *Heflin v. City of Chicago*, No. 95 C 1990, 1996 WL 28238 (N.D.Ill. 1996)(Conlon, J).

Therefore, Defendants respectfully request that this Court enter an order providing that Plaintiff, his attorneys, and witnesses are barred from mentioning, referring to, interrogating, questioning, or introducing evidence of events of other alleged police misconduct.

### 4. Motion to Bar any argument or implication that a "conspiracy" existed.

Defendants seek to bar Plaintiff from arguing that any conspiracy or otherwise inappropriate coordination of action existed in the Chicago Police Department. There is no conspiracy claim here, and there are no other issues relating to a conspiracy for the jury to decide in this case. This evidence and argument is therefore irrelevant under FRE 401. Insinuation of a conspiracy would serve only to inflame the passions of the jury and unfairly prejudice Defendants.

Given the obvious potential for prejudice to the Defendants if Plaintiff were allowed to make arguments regarding these volatile issues, the only way to prevent significant prejudice is to bar Plaintiff from making any reference to or insinuation of a "conspiracy," "coverup," or other improper agreement involving the Defendant Officers and/or any member of the Chicago Police Department. FRE 403. Most importantly, conspiracy is not a claim brought by Plaintiff, so the use of the word "conspiracy" or any variation of the word should be prohibited.

If Plaintiff, his witnesses, or counsel are allowed to testify or argue that they believe the Defendant Officers conferred with other police officers to "coverup" alleged misconduct, it would

only serve to confuse the jury, especially since other police officer witnesses will testify but are not named as Defendants in this matter. There are no issues for the jury to decide relating to a conspiracy, therefore any argument or implication that a conspiracy existed should be barred.

**5. Motion to Bar any implication or testimony that Chicago Police Department personnel are being paid by the City to appear in court and testify.**

Chicago Police Department employees will be testifying at trial. Defendants seek to bar Plaintiff from making any statements or inferences that police personnel are being paid for their time in court. This evidence should be barred as irrelevant under FRE 401 and 402, and more prejudicial than probative under FRE 403.

**6. Motion to Bar any evidence, implication, or argument that the City of Chicago will indemnify the Defendants, pursuant to FRE 411.**

Plaintiff should not be permitted to argue or introduce evidence that the individual Defendants may be indemnified by the City of Chicago for any portion of a judgment that might be entered against them. Whether the City provides indemnity is irrelevant to the issue of whether the Defendants are liable for any acts they allegedly committed. Reference to indemnity agreements between employers and employees is similar to reference to liability insurance, which is prohibited by Federal Rule of Evidence 411. *See Laraz v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) (holding that instructions to a jury on indemnification in § 1983 action required a new trial); *Green v. Baron,* 879 F.2d 305, 310 (8th Cir. 1989) (stating that instructions concerning indemnification are extremely prejudicial); *See also, Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998). Accordingly, all evidence and argument of this nature should be barred.

**7. Motion to bar evidence regarding training of police officers, or training policies or procedures of the Chicago Police Department.**

Defendants seek to bar, pursuant to FRE 401, 402, and 403, Plaintiff from arguing or eliciting testimony as to how the City of Chicago trains, supervises, disciplines, monitors, or

8

controls police officers, this includes evidence or testimony about whether the defendant officers have been trained to testify. There are no *Monell* claims against the City in this case, and there is no evidence in the record that would establish a *Monell* violation by the City here. Accordingly, this type of evidence is irrelevant, pursuant to FRE 401, to the issues in this case, is highly prejudicial, pursuant to FRE 403, and is likely to confuse the jury.

      **8.    Motion to bar reference to or evidence about Chicago Police Department general orders.**

It is anticipated that the plaintiff in this matter may seek to introduce, use, refer to, or elicit testimony about Chicago Police Department general orders and/or special orders. This belief is supported by the fact that the plaintiff has proposed a jury instruction relating to the violation of department polices. These orders, and the procedures contained therein, are not proper evidence on the issue of whether the Defendant Officers' conduct was unconstitutional, and the admission of this evidence will result in undue and unfair prejudice to the defendants, and confuse the jury on the appropriate standard of liability.

Violations of police department general orders do not amount to a constitutional violation, and such evidence is therefore not relevant under Federal Rule of Evidence 401. Section 1983 was designed to protect plaintiffs from violations of their constitutional rights, not violations of state law or departmental regulations and guidelines. *Davis v. Scherer,* 468 U.S. 183, 194 (1984); *Thompson v. City of Chicago*, 472 F.3d 444, 454-455 (7th Cir. 2006)(holding that the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988). Courts look to federal law, not state or municipal regulations, to determine the existence and scope of personal liberties protected by the "reasonableness" standard under the Fourth Amendment. *Gordon v. Degelmann,* 29 F.3d 295, 301 (7th Cir. 1994); *Archie v. City of Racine,* 847 F.2d 1211,

1215-1218 (7th Cir. 1988). Under §1983, the issue is whether an officer violated the Constitution, not whether he should be disciplined by the local police force. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). Accordingly, whether the Defendant Officers here violated department rules or regulations is irrelevant and immaterial.

Moreover, the introduction of evidence that the Defendant Officers may have allegedly violated some portion of a police department regulation or guideline would be far more prejudicial than probative under Federal Rule of Evidence 403. It is extremely likely that a jury would be confused about the standard for determining a constitutional violation if presented with such evidence, and it is also likely that a juror presented with evidence of a "rules violation" would assume, in spite of any cautionary instructions, that a constitutional violation had occurred.

The alleged violation of police department guidelines is also irrelevant to Plaintiff's state law claims, as under Illinois law a violation of self-imposed rules or guidelines, such as police department regulations and general orders, do not normally establish or impose a legal duty. *Morton v. City of Chicago*, 286 Ill.App.3d 444, 454 (1st Dist. 1997); *Blankenship v. Peoria Park District*, 269 Ill.App.3d 416, 422-423 (3rd Dist. 1995). It is also well settled in Illinois that such a violation would not even constitute evidence of negligence, let alone willful and wanton conduct. *Morton*, 286 Ill.App.3d at 454.

Based on all of the above, any alleged violation of Chicago Police Department regulations, and any attempt to introduce, use, refer to, or elicit testimony about Chicago Police Department regulations, should be barred as inadmissible under Federal Rules of Evidence 401, 402, and 403.

### 9. Motion to limit the testimony of plaintiff's non-expert treating physicians to opinions regarding the particular treatment they provided.

Treating physicians must be identified as experts if they are to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(A) ("a party shall disclose to other parties the identity of any person who

may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence"); see also *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-58 (7th Cir. 2004). In this case, Plaintiff has not identified any expert witness as required by Fed. R. Civ. P. 26(a)(2)(A), nor has plaintiff identified any treating physician as a 26(a)(1) witness in his required witness disclosures. None of the treating physicians were identified as experts; therefore, they are fact witnesses whose testimony at trial should be limited solely to the care and treatment each provided Plaintiff, as identified in Plaintiff's initial disclosures under Federal Rule of Procedure 26(a)(1).

This is particularly important in the present case for two reasons. First, it is anticipated that the plaintiff will attempt to solicit opinion testimony from physicians regarding the plaintiff's prognosis. This type of testimony clearly must be offered by an expert, pursuant to FRE 702 and 703. Second, it is anticipated that the plaintiff will attempt to solicit opinion testimony regarding the possibility of future injury/disability resulting from injuries allegedly suffered as a result of the incident. Once again, an expert must give these types of opinions pursuant to the applicable federal rules. Obviously, since no experts have been disclosed by the plaintiff, the introduction of any such testimony, or any other testimony or evidence which must be admitted under FRE 702 and 703 is inappropriate and prejudicial.

As the Seventh Circuit has held in *Musser,* the parties must identify treating physicians as experts if they want them to offer expert testimony at trial, even if they have not been retained for that purpose in anticipation of litigation:

> Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. Gentiva should not be made to assume that each witness disclosed by the Mussers could be an expert witness at trial. *Patel v. Gayes,* 984 F.2d 214, 217 – 18 (7th Cir. 1993) (affirming, under the pre-1993 Federal Rules of Civil Procedure, the exclusion of expert testimony as to duty of care from treating physicians when they were not disclosed as experts). The failure to disclose experts prejudiced Gentiva because there are countermeasures that could have been taken that are not applicable to fact

11

> witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report. In sum, we agree with the district court that even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony.

*Musser*, 356 F.3d at 757-58. Those same arguments apply in this case. During discovery Defendants have relied upon Plaintiff's decision not to identify any expert witnesses, and have proceeded with discovery accordingly. Therefore, at trial, Plaintiff's treating physicians should be barred from giving testimony based upon any special expertise or testimony about issues related to causation, and limited to testifying only about their respective care, treatment, and testing of Plaintiff as treating physicians.

**10. Motion to Bar argument about plaintiff's "long wait for justice," reference to the "long and difficult road" that the plaintiff has taken to get his lawsuit to trial, or reference to the fact that the plaintiff "made it all the way" to trial.**

It is anticipated that plaintiff's counsel will argue that the plaintiff in this matter, Curtis Flowers, has waited three years for his day in court, has overcome numerous obstacles, including delays by the defense, to get his lawsuit to trial. These types are arguments are improper, and should be barred by the Court here pursuant to FRE 403 because they are extremely prejudicial. The incident in this case occurred on May 21, 2008, and the record in this case reflects that the plaintiff filed this lawsuit on March 2, 2009. (Dkt. 1). Since that time, the case has proceeded without significant delay. Whatever delays have arisen certainly cannot be attributed solely to the defendants, and any argument highlighting something akin to the plaintiff having to wait three years for justice implies to the jury that the three year delay between incident and trial is somehow the fault of the defendants, which is untrue.

Additionally, any argument that the plaintiff has overcome multiple obstacles in getting this case to trial, or argument that plaintiff "made it all of the way to trial" despite numerous obstacles is simply untrue, and would mislead the jury. Any statement resembling the statements above, or based on those themes, will be misleading to the jury and therefore prejudicial. All such argument should therefore be barred.

Defendants respectfully request that the Court enter Orders *in limine* consistent with the relief sought by these Motions.

                                                  Respectfully submitted,

                                                  /s/ *Brian P. Gainer*
                                                  One of the Attorneys for the Defendants

Richard B. Levy
Brian P. Gainer
Johnson & Bell, Ltd.
33 W. Monroe, Suite 2700
Chicago, Illinois 60603
(312) 372-0770 (Phone)
(312) 372-9818 (Facsimile)